**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

United States of America,                                 Case No. 23-cr-175 (DWF/DJF)

                    Plaintiff,

v.                                                          **REPORT AND RECOMMENDATION**

Victor Demetrius Cole,

                    Defendant.

---

This matter is before the Court on Defendant Victor Demetrius Cole's Motion to Suppress Evidence Obtained as the Result of a Warrantless Arrest ("Motion to Suppress Arrest Evidence") (ECF No. 23) and Motion to Suppress Evidence Obtained from the Search of Cell Phones ("Motion to Suppress Cell Phone Evidence") (ECF No. 24). In his Motion to Suppress Arrest Evidence, Mr. Cole argues law enforcement lacked probable cause to believe he committed a crime when they stopped and arrested him in his car after executing a search warrant at his residence on March 13, 2023 ("Oday Street Warrant"), and that all evidence obtained from his person and the car during the traffic stop and arrest must be suppressed (ECF No. 36 at 4–7; ECF No. 33 at 6–7). In his Motion to Suppress Cell Phone Evidence, Mr. Cole argues that a March 14, 2023 Search Warrant ("Cell Phone Warrant") authorizing law enforcement to search two cell phones seized during his arrest lacked probable cause, lacked particularity, and was overbroad. (ECF No. 36 at 7–17.) He seeks suppression of all evidence obtained from the cell phones. (*Id.*)

Because law enforcement had probable cause to stop and arrest Mr. Cole, probable cause to search his vehicle, and authority to search the vehicle as part of an inventory search prior to

towing it, the Court recommends denying Mr. Cole's Motion to Suppress Arrest Evidence. Because the Government represents it does not intend to offer the cell phone evidence in its case-in-chief at trial, the Court finds the Motion to Suppress Cell Phone Evidence is moot in that respect. But the parties continue to dispute whether evidence obtained from the cell phones can be used in the Government's rebuttal or for impeachment of witnesses other than Mr. Cole. Because the Court finds the Cell Phone Warrant was unsupported by probable cause and that the "good faith" exception to suppression does not apply, it recommends granting the Motion to Suppress Cell Phone Evidence to the extent the Government seeks to offer cell phone evidence for those purposes.

## I.    Background

St. Paul Police Department Officer Daniel Gleason testified at the evidentiary hearing on Mr. Cole's motion. In late June 2022, a West Fargo Police Department officer contacted Officer Gleason and told him police in the Fargo area had arrested an individual who claimed he frequently purchased heroin from a man named "Cole" in or around St. Paul, Minnesota (ECF No. 33 at 11–12). The individual provided the West Fargo officer with a description of Mr. Cole's appearance and age and explained that they previously spent time in prison together in Moose Lake. (*Id.* at 11.) The individual identified 94 Oday Street in Maplewood, Minnesota (the "Oday Street Residence") as the address where he purchased illegal narcotics from Mr. Cole and identified Mr. Cole in a photograph as the dealer from whom he had purchased the narcotics. (*Id.* at 11–12.)

Officer Gleason began conducting surveillance at the Oday Street Residence in June 2022 continuing through fall of that same year. (*Id.* at 30.) When Officer Gleason began surveilling the property he was aware that an individual known as "Mr. Magnuson" was the owner of the

property, that in 2019 law enforcement officers executed a search warrant on the property and found drugs, and that Mr. Magnuson pled guilty to felony drug offenses as a result. (*Id.* at 30–31.) Based on his own investigation, Officer Gleason believed Mr. Cole also used the Oday Street Residence as his home. (*Id.* at 12.)

In August 2022, Officer Gleason observed a minivan parked in the driveway of the Oday Street Residence, ran its license plate number, and discovered the vehicle was stolen. (*Id.* at 12-13.) After the minivan left the residence, a Maplewood police officer pulled it over and arrested the driver. The officer found loose pills in the driver's pocket and a loaded gun and a bottle of fentanyl in the vehicle. (*Id.* at 12.) Officer Gleason testified that he had seen the driver exit the rear of the Oday Street Residence. (*Id.* at 12–13.) The driver gave a false statement claiming he was on his way from a park at the time of his arrest and also denied he had obtained the drugs from Mr. Cole. (*Id.* at 13–14.)

In November 2022, Minnesota Bureau of Criminal Apprehension Special Agent Flenniken notified Officer Gleason that Agent Flenniken had been receiving information about Mr. Cole selling narcotics from the Oday Street Residence since September 2022. (*Id.* at 14.) Agent Flenniken arranged a controlled purchase of narcotics from Mr. Cole in November 2022 at a gas station near the Oday Street Residence using a confidential reliable informant ("CRI") (*id.* at 14–15).

In addition to Officer Gleason's surveillance in the fall and summer of 2022, law enforcement officers placed a camera across the street from the Oday Street Residence to surveil the front of the property and the driveway for a period of several months. (*Id.* at 29-30.) In March 2023, Special Agent Flenniken received information from the CRI that the CRI was at the Oday Street Residence and saw a large quantity of blue M-30 fentanyl pills there. (*Id.* at 15.)

Within 72 hours of receiving this information, on March 8, 2023, police applied for and obtained the Oday Street Warrant authorizing a search of the Oday Street Residence. (*Id.* at 15–16, 27.)

Officers executed the search on March 13, 2023. (*Id.* at 16.)  The house contained a kitchen, a living room and three bedrooms on the ground level, including a bedroom in the northwest corner of the house containing women's clothing, a bedroom on the southeast side that appeared to be used for storage, and a bedroom in the northeast corner of the house. (*Id.* at 16-17.)  The basement level of the house contained another bedroom and another small kitchen and living area. (*Id.* at 17.)  Mr. Magnuson was present when the officers searched the property and they interviewed him at the scene. (*Id.* at 17.)  Officers found a small quantity of drugs in the basement area of the home, which Mr. Magnuson admitted was cocaine that he had hidden there. (*Id.* at 18.)  Officers also found drugs on the ground level of the home.  Officers found three bags of marijuana and approximately 905 grams of material in a large Tupperware cooler, which field tested positive as powdered fentanyl, in the northeast bedroom. (*Id.* at 16, 18–20.)  Officers also found documents in the northeast bedroom bearing Mr. Cole's name and the Oday Street Residence address. (*Id.* at 16, 18–19.)  None of the records found in the northeast bedroom was addressed to Mr. Magnuson's or had anyone else's name on them. (*Id.* at 18.)  During the interview, Mr. Magnuson said he owned the property, that his daughter sometimes stayed at the house in a bedroom on the ground level, that he rented the ground level of the house to Mr. Cole, that the basement bedroom was his, and that he stayed in the basement level on an occasional basis. (*Id.* at 16–17.)

After the search, on the same day, Special Agent Flenniken identified an address in Arlington, Minnesota, where officers believed Mr. Cole was located at the time.  This understanding was based on phone pings obtained through a separate warrant, the presence of a

vehicle registered to Mr. Cole in the driveway of the Arlington address, and information from an informant who said Mr. Cole traveled to the Arlington address to sell narcotics to people in that area. (*Id.* at 20–22, 27, 35.) Officer Gleason testified police were looking for Mr. Cole to arrest him for the fentanyl seized in the search of the Oday Street Residence. (*Id.* at 21.) He further testified he believed they had probable cause to make a warrantless arrest of Mr. Cole at that point in time. (*Id.* at 21–22.)

The officers traveled to Arlington to conduct surveillance of the identified address and saw a Saturn Vue registered to Mr. Cole parked in the driveway. (*Id.* at 21–22.) Officer Gleason parked roughly a block away from the residence and waited for the vehicle to leave. Using binoculars, Officer Gleason identified Mr. Cole as the driver when it drove past him based on photos from Mr. Cole's social media accounts and his instruction permit. (*Id.* at 22–24, 35-36.) Officer Gleason and several other officers in unmarked vehicles and plain clothes followed Mr. Cole from Arlington north to the Twin Cities metropolitan area. (*Id.* at 24–25.) Once they reached the metropolitan area, Mr. Cole's car exited and turned in the direction opposite from his address, continued south again, then east, then north, then west, and then south again. (*Id.* at 24.) Officer Gleason testified that, based on his training and experience, Mr. Cole was driving in an evasive manner by circling from one highway to the next because was aware he was being followed and was attempting to evade law enforcement. (*Id.* at 24–25.)

Officer Gleason then made a call and requested that uniformed Minnesota State Patrol troopers stop and arrest Mr. Cole. (*Id.* at 25–26.) Prior to the stop, the officers were aware that Mr. Cole did not have a valid driver's license. They did not stop Mr. Cole because of the traffic violation, however, but instead considered it a "felony stop" based on probable cause to arrest him. (*Id.* at 26, 47, 54–55.)

Law enforcement officers stopped Mr. Cole on a freeway on-ramp in Mendota Heights, Minnesota. (*Id.* at 45, 47–48.) Uniformed officers from both the Minnesota State Patrol and the City of St. Paul participated. (*Id.* at 41.) The officers approached the vehicle with their weapons drawn and ordered Mr. Cole to show his hands and exit the vehicle. (*Id.* 48, 54–55.) The officers handcuffed Mr. Cole, arrested him, and secured him in the back of a squad car. (*Id.* at 41–44.) St. Paul Police Sergeant Thomas Weinzettel, who arrived shortly after the stop, assisted the officers at the scene. (*Id.* at 41.) He testified at the motions hearing that when the officers took Mr. Cole into custody, they searched his person and found cash and a digital scale with white residue on it in his pockets. (*Id.* at 42, 45, 55–56.)

Sergeant Weinzettel further testified that, because Mr. Cole's car was stopped at a hazardous location on a freeway on-ramp, Mr. Cole did not have a valid driver's license, and there was no driver with a valid license in the car, the officers determined that it would need to be towed to the City of St. Paul impound lot and its contents inventoried consistent with St. Paul Police Department policy. (*Id.* at 45, 47–51.) The officers further determined that they had probable cause to search the car for additional narcotics or related items. (*Id.* at 45.)

Sergeant Weinzettel participated in the vehicle search, which began roughly 10 minutes after the initial stop. (*Id.* at 45–46.) He found a respirator mask in the back seat, which he testified is common in fentanyl production and manipulation to prevent inhalation of fentanyl debris or particles. (*Id.* at 46.) He also found a duffel bag in the rear right passenger seat containing marijuana and fentanyl, among other items. (*Id.* at 46–47; Gov. Ex. 1 at 3.) The officers seized two cell phones from the front passenger seat. (ECF No. 33 at 48.)

On March 14, 2023, the day after Mr. Cole's arrest, St. Paul Police Officer Jacob Toupal applied for a warrant to search the two cell phones seized from the car during the search (Gov.

Ex. 1).  Officer Toupal averred that he was involved in Mr. Cole's March 13 arrest and the recovery of contraband and evidence from Mr. Cole's car.  (*Id.*)  His affidavit sought all "information contained in the device(s) to be search that related to [controlled substance offenses, possession or use of firearms, and gang membership or activity] … ". (*Id.* at 1, brackets in the original.)  It alleged that officers found two pounds of fentanyl in a room believed to be Mr. Cole's during the March 13 search of the Oday Street Residence.  (*Id.* at 3.)  The affidavit further described the searches conducted at the time of Mr. Cole's arrest, during which officers found a scale in his pocket with white residue on it and various items in the duffle bag in his car, including a wallet containing Mr. Cole's driver's license and credit cards, dozens of empty plastic baggies, and a variety of substances that either presumptively tested positive or otherwise appeared to be narcotics, including fentanyl, methamphetamine, heroin, and psychedelic mushrooms.  (*Id.*)

Officer Toupal's affidavit stated that police officers observed Mr. Cole talking on a cell phone while driving shortly before he was arrested.  (*Id.*)  Based on these allegations, Officer Toupal stated the following:

> In this investigation, your affiant believes COLE is actively involved in the illegal possession and sales of narcotics. Your affiant believes that there is a high likelihood the cell phone seized during the above events will contain evidence to support this investigation and will show knowledge of various illegal narcotics and firearm related offenses. It is also very likely that the seized cell phone will help identify further sources /co-conspirators of Narcotics related activity that will further this and other investigations.

(*Id.*)

Officer Toupal did not testify at the motions hearing and there is no evidence before the Court regarding who executed the Cell Phone Warrant, whether they read the warrant or the affidavit, or how they executed the warrant.

## II.    Motion to Suppress Arrest Evidence

Mr. Cole argues his arrest on March 13, 2023 lacked probable cause and that all evidence seized at the time of his arrest must be suppressed.  (ECF No. 36 at 4–7.)  The Government argues probable cause supported both the arrest and the searches, based on the information seized from Mr. Cole's bedroom and the other information officers used to obtain the Oday Street Warrant (ECF No. 42 at 6–10).  With respect to the vehicle search, the Government offers two additional arguments: (1) that the search was justified under the "automobile exception" based on the officers' reasonable belief that the vehicle contained evidence related to the crime of arrest; and (2) that the search was a valid inventory search based on the officers' determination that the vehicle needed to be towed from the scene and impounded.  (*Id.* at 8–10.)

Based on the arguments of counsel and the evidence proffered and admitted at the motions hearing, the Court finds the officers had probable cause to stop and arrest Mr. Cole and search his person, and probable cause to search his vehicle.  The Court further finds the officers had lawful grounds to conduct an inventory search of the vehicle before they towed and impounded it.

### A.    The Initial Stop

As a threshold matter, the Court first considers two interrelated issues raised by the somewhat convoluted briefing filed in response to Mr. Cole's motions:  first, whether Mr. Cole has properly challenged the validity of the initial stop and the search of his person; and second, what legal standard applies to the stop.  With respect to the first issue, the Government contends Mr. Cole failed to challenge the initial stop and that the only live issue is whether probable cause supported his subsequent arrest and the search of his vehicle.  (ECF No. 42 at 7.)  In a self-styled "response" to Mr. Cole's post-hearing Memorandum and Reply briefing, the Government goes

even further, arguing that Mr. Cole "waived any argument that the search of his person, and the evidence obtained during that search, was improper." (ECF No. 44 at 2.)

The Government's argument on these points is both improper and specious. Pursuant to the Court's orders (ECF Nos. 28, 35, 41), the Court took Mr. Cole's motions under advisement following its receipt of Mr. Cole's Reply. The Government failed to seek the Court's leave to submit its later filed, unauthorized response. The Court accordingly declines to consider it and finds that the Government waived its waiver argument.[1] And in any event, the Court further finds Mr. Cole clearly challenged the validity of the initial traffic stop as a component of the arrest (*see* ECF No. 36 at 5, arguing that the stop "was an arrest from the very beginning"), and that he seeks to suppress all evidence obtained during that encounter, including the evidence seized from his person and the vehicle. Mr. Cole's counsel confirmed this on the record at the motions hearing:

> MS. MOHRLANT: … We have two motions. The first motion regards a warrantless arrest of Mr. Cole, and incident to that arrest, he was searched and there were certain items discovered on his person, and the vehicle he was driving at the time of his arrest was also searched, so we would ask to suppress that evidence that was seized and obtained as a result of the warrantless arrest.
>
> The COURT: So all evidence obtained in the search of the car and all evidence obtained from his person at the time of his arrest?
>
> MS. MOHRLANT: Correct, your Honor.
>
> (ECF No. 33 at 6–7.)

With respect to the applicable legal standard, the Court considers whether the initial stop of Mr. Cole's vehicle was an investigatory stop requiring reasonable suspicion, *see Terry v.*

---

[1] The Government attached a copy of the Oday Street Warrant as an exhibit to its unauthorized response (ECF No. 44-1) and argued that warrant sanctioned the search of Mr. Cole's person in Mendota Heights—miles away from the Oday Street Residence and outside Ramsey County where the search was authorized. Because the Government did not offer this document during the motions hearing the Court will not admit it into evidence.

*Ohio*, 392 U.S. 1, 20–22 (1968); *United States v. Walker*, 555 F.3d 716, 719 (8th Cir. 2009), or

an arrest requiring probable cause; *see, e.g.*, *United States v. Sanford*, 813 F.3d 708, 712–13 (8th

Cir. 2016). The record on this issue is also quite clear. Though the officers who arrested Mr.

Cole were aware he was driving without a license, they testified that they did not consider the

stop to be an investigatory or traffic stop, but rather, a felony arrest based on probable cause.

(*See* ECF No. 33 at 25-26, Officer Gleason agreeing that "it was a PC stop"; 54–55, Sergeant

Weinzettel agreeing that it was "conducted as a felony stop.")

Moreover, whatever the officers' intent may have been, the manner in which they

conducted the stop compels the conclusion that probable cause was required. In the Eighth

Circuit, courts consider five factors in determining whether an investigatory stop has transformed

into an arrest:

> (1) the number of officers and police cars involved; (2) the nature of the crime
> and whether there is reason to believe the suspect might be armed; (3) the strength
> of the officers' articulable, objective suspicions; (4) the erratic behavior of or
> suspicious movements by the persons under observation; and (5) the need for
> immediate action by the officers and lack of opportunity for them to have made
> the stop in less threatening circumstances.

*United States v. Johnson*, 31 F.4th 618, 623 (8th Cir. 2022) (quoting *Pollreis v. Marzolf*, 9 F.4th

737, 745 (8th Cir. 2021)). In applying these factors, courts allow officers to approach suspects

with their weapons drawn and immediately handcuff the suspect without transforming the stop

into an arrest when they reasonably believe the suspect is armed and dangerous. *See id.* at 623.

But when there is no evidence establishing a reasonable belief that the suspect is armed and

dangerous, such a show of force can transform a traffic stop into an arrest requiring probable

cause. *See Pollreis*, 9 F.4th at 745 ("To use handcuffs during an investigatory stop, the Fourth

Amendment requires some reasonable belief that the suspect is armed and dangerous or that the

restraints are necessary for some other legitimate purpose.") (cleaned up) (internal citations and

10

quotations omitted); *United States v. Fischer*, 364 F.3d 970, 973–74 (8th Cir. 2004) (finding officers who brandished weapon during investigatory stop did not transform the stop into an arrest because they had information that an individual matching the suspect's description had a gun).

In this case, the record reflects that the stop was accompanied by a significant show of force:  multiple law enforcement officers and agencies participated, several officers drew their weapons, the officers commanded Mr. Cole to show his hands and exit the vehicle, they further commanded him to walk backwards and kneel on the ground, and they then handcuffed and searched him.  (ECF No. 33 at 54–55.)  The record is devoid of any evidence suggesting they suspected Mr. Cole was armed or dangerous, that he resisted the officers, that he engaged in threatening behavior during the stop, that he was approaching a dangerous neighborhood, or that any other circumstance existed that would justify such a show of force based solely on reasonable suspicion.  The Court concludes for these reasons that the initial stop was an arrest requiring probable cause.

### B.    Probable Cause for the Arrest

Mr. Cole argues the officers who arrested him did not have probable cause because: (1) the illegal narcotics found on the ground level of the Oday Street Residence were in the home he shared with Mr. Magnuson, who pled guilty to a previous drug charge and admitted to hiding drugs during the execution of the Oday Street Warrant; and (2) the only other evidence to support it came from informants with whom Officer Gleason had limited familiarity, who provided much of their information months prior to the search.  (ECF No. 36 at 6.)  The Government responds that probable cause to arrest Mr. Cole, search his person, and search his vehicle was provided by: (1) the evidence and surveillance establishing the basis for the Oday

Street Warrant; and (2) the fact that officers found the illegal narcotics in a bedroom they reasonably believed was Mr. Cole's.  (ECF No. 42 at 6–8.)

"In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  The existence of probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id.*  This is a "practical, nontechnical" inquiry that calls for "facts and circumstances sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111–112 (1975).  It requires "more than a reasonable, articulable suspicion that a person committed a crime." *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020). There must be a "fair probability" or "substantial chance" that the person has committed an offense.  *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). This is "not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (cleaned up) (internal citations and quotations omitted).

Before they obtained the search warrant for the Oday Street Residence, police corroborated that Mr. Cole lived there and received information from two different sources that Mr. Cole was selling drugs from that location (ECF No. 33 at 11–15).  The first source provided a statement describing Mr. Cole by name, age and appearance, and was able to identify him by photograph.  (*Id.* at 11–12.)  The second was a confidential reliable informant (CRI) who participated in a controlled buy of blue fentanyl pills at a gas station near Mr. Cole's house.  (*Id.* at 15.)  Officer Gleason conducted surveillance on the house.  He witnessed a van leaving the Oday Street Residence, and when police pulled it over, they found the driver with a bottle of blue

12

fentanyl pills who provided misinformation about where he had been. (*Id.* at 12–14.) Within 72-hours of applying for the Oday Street Warrant, Agent Flenniken received information from his CRI that the CRI had seen a large amount of fentanyl at the Oday Street Residence. (*Id.* at 15.) Upon executing the search warrant at the Oday Street Residence, officers found a large quantity of fentanyl and other items in a bedroom, which also contained personal documents addressed to Mr. Cole and no documents indicating anyone else used the room. (*Id.* at 16.) Much of this evidence supported the Oday Street Warrant, which Mr. Cole does not challenge, and the drugs and documents obtained in the search authorized by that warrant added to the significant quantum of evidence indicating Mr. Cole was engaged in distributing illegal narcotics.

Mr. Cole's attacks upon this evidence are unavailing. He argues that because the informants were working with other law enforcement officers, Officer Gleason only had limited information about them. (ECF No. 36 at 6.) But it is well-settled that a law enforcement officer may rely on "statements from other officers and informants to establish probable cause[.]" *United States v. Reed*, 921 F.3d 751, 757 (8th Cir. 2019). This is especially true when the informant has demonstrated reliability. *See id.* (citation omitted). In this case, Agent Flenniken's CRI corroborated his allegation that Mr. Cole was selling drugs by participating in a controlled buy at a gas station near the Oday Street Residence. The individual who was arrested in Fargo corroborated his statement by identifying Mr. Cole in a photograph and providing an address for Mr. Cole that police independently confirmed. (ECF No. 33 at 11–15); *see United States v. Evans*, 4 F.4th 633, 637 (8th Cir. 2021) ("[C]orroboration of minor innocent details can suffice to establish probable cause.") (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). Moreover, the statements from these two independent sources corroborated each other.

Mr. Cole argues most of the information provided by these informants was stale. (ECF No. 36 at 6.) But within 72 hours before police obtained the Oday Street Warrant, the CRI provided new information that Mr. Cole was in possession of fentanyl at the Oday Street Residence. (ECF No. 33 at 15–16); *see also United States v. Ortiz-Cervantes*, 868 F.3d 695, 700 (8th Cir. 2017) (holding that in the context of investigations into "ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant [do] not necessarily make the information stale"). And police found fentanyl in a bedroom they reasonably suspected was Mr. Cole's within hours of his arrest (ECF No. 33 at 16). Mr. Cole's final argument—that the drugs may have belonged to Mr. Magnuson—presents a possible defense at trial, but it does not undermine the conclusion that a reasonable officer could have believed the drugs in the bedroom belonged to Mr. Cole. For these reasons, the Court finds the information known to police was sufficient to establish probable cause for Mr. Cole's arrest on the drug distribution charge. *See, e.g.*, *United States v. Freeman*, 79 F.3d 1149 (6th Cir. 1996) (holding that officers had probable cause to arrest the defendant "after [the] discovery of drugs in [his] home" and documents with his name on them in a search executed pursuant to a valid warrant).

### C.    The Searches of Mr. Cole's Person and Vehicle

Having found that police had probable cause to arrest Mr. Cole, the Court further finds they conducted a valid search of his person incident to his arrest. *See, e.g.*, *Birchfield v. North Dakota*, 579 U.S. 438, 460 (2016). Furthermore, it is a longstanding principle of law—the "automobile exception"—that police may search a vehicle without a warrant based on probable cause to believe the vehicle will contain contraband or evidence of a crime under investigation. *See, e.g.*, *United States v. Soderman*, 983 F.3d 369, 375 (8th Cir. 2020). During the search of

Mr. Cole's person they found cash in his pockets and a scale with white powder residue in his jacket (ECF No. 33 at 26, 45). This evidence, in addition to all the other evidence officers collected prior to his arrest, established probable cause under the automobile exception to search the car for evidence of narcotics distribution. *See, e.g.*, *United States v. Harper*, 4:19-cr-464 (JAR/NCC), 2021 WL 3409639, at *6 (E.D. Mo. July 14, 2021) (finding probable cause to search a vehicle under the automobile exception, in part, because officers found a digital scale on the suspect's person), *report and recommendation adopted*, 2021 WL 3404030 (E.D. Mo. Aug. 4, 2021); *United States v. Fisher*, No. 19-cr-320 (SRN/LIB), 2020 WL 4727429, at *9 (D. Minn. Aug. 14, 2020) (finding probable cause to search an impounded vehicle under the automobile exception, in part, because the officers found a digital scale with methamphetamine residue on it during the initial stop).

Finally, the record reflects that Mr. Cole's car inevitably would have to be towed because Mr. Cole had no valid driver's license, he was under arrest, there were no other passengers in the car who could drive it, and it presented a significant public safety risk because it was stopped on a freeway on-ramp. (ECF No. 33 at 45.) Officer Gleason testified that towing, impounding and inventorying a vehicle under these circumstances is consistent with St. Paul Police Department policy. (ECF No. 33 at 49; *see also* Gov. Ex. 2, St. Paul Police Department Policy authorizing officers to open any containers found within a vehicle during an inventory search prior to towing it.) It is not a constitutional violation for police to impound a vehicle and conduct an inventory search of its contents if the impoundment and the search are conducted pursuant to departmental policy. *See, e.g.*, *United States v. Kimhong Thi Le*, 474 F.3d 511, 514-515 (8th Cir. 2007). That the officers had authority to conduct a valid inventory search of the car thus establishes an

alternative basis for the vehicle search. For the foregoing reasons, the Court recommends denying Mr. Cole's Motion to Suppress Arrest Evidence.

### III.    Motion to Suppress Cellphone Evidence

Mr. Cole seeks to suppress all evidence obtained from the two cell phones seized from his car during the search conducted at the time of his arrest. He challenges the validity of the Cell Phone Warrant, which authorized police to search the contents of the phones (ECF No. 36 at 7–17). Mr. Cole concedes that the Government may use evidence obtained from the cell phones to impeach Mr. Cole (*see* ECF No. 43 at 3), so the Court denies Mr. Cole's motion to suppress with respect to this use. Moreover, the Government represents that it will not use any evidence from the cell phones in its case-in-chief (ECF No. 42 at 10–11). The Court accordingly finds Mr. Cole's Motion to Suppress Cell Phone Evidence moot with respect to the use of cell phone evidence for this purpose. *See, e.g.*, *United States v. Solomon*, 23-cr-157 (SRN/TNL), 2023 WL 5164523, at *2 (D. Minn. Aug. 11, 2023) (collecting cases).

But these findings do not end the inquiry. The Government explicitly reserved the right to use information from the cell phones in its rebuttal and for impeachment purposes in general—without regard to the identity of the witness subject to impeachment (*see* ECF No. 42 at 10–11). Mr. Cole objects to any use of evidence obtained from the cell phones other than for impeachment of Mr. Cole himself (ECF No. 43 at 2–3). The Court thus addresses the merits of Mr. Cole's Motion to Suppress as it relates to the Government's rebuttal case and the impeachment of witnesses other than Mr. Cole. *See, e.g., United States v. Martinez*, 10-cr-339 (PJS/JJK), 2011 WL 1363976, at *2 (D. Minn. Mar. 17, 2011) (addressing the merits of a suppression motion when the government represented that it reserved the right to use the

evidence for "impeachment or rebuttal purposes"), *report and recommendation adopted*, 2011 WL 1363989 (D. Minn. Apr. 11, 2011).

In ruling on a motion to suppress evidence obtained from the execution of a search warrant, the Court determines probable cause "based on the information before the issuing judicial officer." *United States v. Smith*, 581 F.3d 692, 694 (8th Cir.2009) (internal quotation marks and citation omitted). "Probable cause exists if the warrant application and affidavit describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place[.]" *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009). To satisfy this requirement, "there must be evidence of a nexus between the contraband and the place to be searched[.]" *United States v. Tellez*, 217 F.3d 547, 549–50 (8th Cir. 2000). "Factors to consider in determining if a nexus exists include the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) (internal quotations and citations omitted).

In this case, the search warrant affidavit lacked any allegation establishing a likelihood that the cell phones would contain evidence of "controlled substance offenses, possession or use of firearms, and gang membership or activity" (Gov. Ex. 1 at 1). The affidavit was entirely devoid of any allegation suggesting Mr. Cole had a history of possessing illegal firearms or participating in gang activity. The affidavit did contain factual assertions related to Mr. Cole's alleged drug trafficking: the fentanyl found in a room containing Mr. Cole's mail; the scale with white powdery residue on it in Mr. Cole's jacket; and the various drugs officers found in searching his vehicle at the time of his arrest. (*Id.* at 3.) While these allegations established probable cause to believe Mr. Cole may have participated in drug trafficking, they did not establish a nexus between that alleged activity and the cell phones found in the car.

In an effort to establish a link between Mr. Cole and the cell phones, the affidavit asserted that officers observed Mr. Cole using a cell phone shortly before they initiated his arrest. (*Id.*) But "[p]ossessing a cell phone during one's arrest for a drug-related [offense] is insufficient by itself to establish a nexus between the cell phone and any alleged drug activity." *United States v. Armstrong*, 21-cr-228 (DWF/ECW), 2022 WL 17417901, at *10 (D. Minn. Sept. 2, 2022) (quoting *United States v. Ramirez*, 180 F. Supp. 3d 491, 495 (W.D. Ky. 2016)) (brackets added)), *report and recommendation adopted*, 2022 WL 16960633 (D. Minn. Nov. 16, 2022). The mere fact that Mr. Cole happened to use a cell phone shortly before his arrest also did nothing to create a nexus between the alleged illegal drug possession and the cell phones. *See United States v. Eggerson*, 999 F.3d 1121, 1125 (8th Cir. 2021) ("There is no reason to suspect that drug dealers are any less likely than regular people to have and use a cell phone.") (citations omitted).

According to the search warrant affidavit, Officer Toupal believed there was a "high likelihood" the phones would contain evidence showing "knowledge of various illegal narcotics and firearm related offenses" (Gov. Ex. 1 at 3), but the affidavit did not explain *why* Officer Toupal held that belief. It did not allege the call Mr. Cole made just before his arrest was related to illegal activity, that Mr. Cole ever used a cell phone to arrange any narcotics transaction, or that a search of Mr. Cole's social media accounts established a connection between his use of phones and drugs, firearms or any other illegal activity. Nor did it assert, even generally, that in Officer Toupal's training and experience, drug traffickers possess firearms, participate in gangs, or use their cell phones as tools of the trade. There was simply no allegation in the search warrant affidavit establishing any foundation for Officer Toupal's belief that the phones would contain the evidence sought. The Court cannot infer a link when none is alleged, and thus the requisite nexus necessary for probable cause was lacking. *See Armstrong*, 2022 WL 17417901,

at *9–12); *see also United States v. Merriweather*, 728 F. App'x 498, 506 (6th Cir. 2018) (court had "good reasons" to find warrant lacked probable cause when affiant alleged only that officers found phone on suspect's person when he was arrested for drug-related conspiracy).

Notwithstanding the absence of probable cause, under the "good faith" exception recognized in *United States v. Leon*, 468 U.S. 897 (1984), the Court need not suppress evidence obtained from the cell phones "if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Houston*, 665 F.3d 991, 994 (8th Cir. 2012) (internal quotations and citations omitted). "The objective good faith inquiry requires analysis of 'whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization.'" *United States v. Randle*, 29 F.4th 533 (8th Cir. 2022) (quoting *Leon*, 468 U.S. at 922 n.23). "[I]n assessing whether reliance on a search warrant was objectively reasonable under the totality of the circumstances, it is appropriate to take into account the knowledge than an officer in the searching officer's position would have possessed." *United States v. Curry*, 911 F.2d 72, 78 (8th Cir. 1990). A court can "look outside of the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit" in determining whether the *Leon* good faith exception applies. *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014) (cleaned up). However, evidence obtained because of an unconstitutional search should be suppressed under the following circumstances:

(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;

(2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant;

(3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and

(4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Houston*, 665 F.3d at 995 (quoting *United States v. Proell*, 485 F.3d 427, 431 (8th Cir. 2007)).

Here, there was no allegation in the Cell Phone Warrant affidavit to suggest Mr. Cole had any involvement whatsoever in illicit firearms or gang activity. Without more, the affidavit lacked sufficient indicia of probable cause—or any indicia at all—to support a reasonable belief in its existence. Moreover, Officer Toupal did not testify at the hearing, and the Court has no information regarding who executed the Cell Phone Warrant, whether they received and read the warrant, whether the affidavit was attached to the warrant, or what they knew generally about Mr. Cole's case to support probable cause for the search. *See United States v. Jackson*, 18-cr-211 (JNE/ECW), at *12 (declining to apply *Leon*, in part, because of "the absence of any evidence or argument regarding whether the application was attached to the warrant, who executed the search, or the knowledge of the executing officer"), *report and recommendation adopted*, 2019 WL 13127184 (D. Minn. Feb. 26, 2019); *Armstrong*, 2022 WL 17417901, at *18–19 (declining to apply the *Leon* exception when there was no evidence regarding who executed warrant and whether the warrant affidavits were provided to the individual who executed it). Given the lack of probable cause within the four corners of the Cell Phone Warrant to support the search conducted, and the absence of any other supporting evidence in the record regarding the executing officers' knowledge, the Court cannot apply the *Leon* good faith exception to the facts of this case. For these reasons the Court recommends granting Mr. Cole's Motion to Suppress Cell Phone Evidence to the extent that it challenges the Government's use of such evidence in rebuttal or to impeach third-party witnesses.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.     Mr. Cole's Motion to Suppress Evidence Obtained as the Result of a Warrantless Arrest (ECF No. 23) be **DENIED**; and

2.     Mr. Cole's Motion to Suppress Evidence Obtained from the Search of Cell Phones (ECF No. 24) be **DENIED** with respect to the use of such evidence to impeach Mr. Cole, **DENIED AS MOOT** with respect to the use of such evidence in the Government's case-in-chief, and **GRANTED** for all other purposes.

Dated: October 25, 2023                          *s/ Dulce J. Foster*
                                                 Dulce J. Foster
                                                 United States Magistrate Judge


## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).